IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| INCLINE RANCH, LLC,<br><br>     Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA and UNITED STATES FOREST SERVICE,<br><br>     Defendants. | CV 23–86–BU–DLC<br><br><br>ORDER |

This matter comes before the Court on cross motions for summary judgment filed by Plaintiff Incline Ranch, LLC, ("Incline Ranch" or "Plaintiff") and Defendants United States of America and the United States Forest Service ("Defendants"). (Docs. 19, 42.) For the reasons stated below, the Court grants Defendants' Cross Motion for Summary Judgment (Doc. 42), denies Incline Ranch's Motion for Summary Judgment (Doc. 19), and denies Incline Ranch's Motion in Limine (Doc. 34) as moot.

### FACTUAL AND PROCEDURAL BACKGROUND

Incline Ranch owns real property in Section 15, Township 1 North, Range 7 East, Gallatin County, Montana, described as Parcel 1 on Certificate of Survey 2194 ("the Incline Property"). (Doc. 21 ¶ 1.) The Incline Property lies south of

1

Brackett Creek in the Bangtail Mountains and abuts the Custer–Gallatin National Forest to the east. (*Id.* ¶ 3.) The Incline Property is accessed via Skunk Creek Road, also known as Forest Service Road No. 974. (*Id.* ¶ 4.) A portion of Skunk Creek Road enters the Incline Property from the north, passes through its eastern quarter, makes a hairpin turn, and exits eastward onto United States Forest Service (the "Forest Service") land in Section 14 (the "Incline Road Section"). (*Id.* ¶ 5.) Near the hairpin turn in the Incline Property lies an area containing (i) a seasonal gate installed by the Forest Service (the "Gate"); (ii) the driveway leading from the Incline Road Section to Incline Ranch's residence (the "Main Driveway"); (iii) a gatehouse located at that entrance of the Main Driveway (the "Gatehouse"); (iv) a driveway leading from the Incline Road Section to Incline Ranch's corral (the "Corral Driveway"); and (v) the area where the Incline Road Section crosses Skunk Creek Road. (*Id.* ¶ 7.)

On January 3, 1966, Carl and Jewell Johnson (the "Johnsons"), predecessors-in-interest to Incline Ranch, granted Northern Pacific Railway Company ("Northern Pacific") "a perpetual, nonexclusive easement and right-of-way for an existing road which may be reconstructed, used and maintained" across the Johnsons' property (the "Johnson Easement"). (*Id.* ¶¶ 8–12; Doc 4-1.) The Johnson Easement granted Northern Pacific and its successors a 66-foot-wide strip of land for road purposes and reserved to the Johnsons "reasonable rights of

ingress and egress . . . in a manner that will not unduly interfere with [Northern Pacific's] use." (Doc. 45 ¶¶ 12–13.) It also permitted Northern Pacific to "cut and remove brush, trees and other obstructions" interfering with road use and authorized Northern Pacific "to grant to third parties, including the United States of America, Department of Agriculture, [and the] Forest Service, … the right to use said right-of-way in common with [Northern Pacific]." (*Id.* ¶¶ 14–15.)

On July 18, 1967, Northern Pacific conveyed the Johnson Easement to the United States, with the Forest Service as the acquiring agency (the "1967 Conveyance"). (Doc. 21 ¶¶ 16, 19.) The 1967 Conveyance granted the United States "a perpetual easement for a road" across the same strip of land and provided that the Forest Service "shall have the right to use the road . . . for all purposes deemed necessary . . . subject to such traffic-control regulations and rules as [it] may reasonably impose." (*Id.* ¶ 25.) It further granted the Forest Service the right to "construct, reconstruct, and maintain" the road and to authorize its use by other governmental agencies and the public, subject to reasonable regulation. (*Id.*)

Plaintiff filed this action on November 17, 2023 (Doc. 1), and filed an Amended Complaint on February 9, 2024, seeking declaratory relief under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, to determine the scope of rights conveyed by the 1966 Johnson Easement and the 1967 Conveyance governing Skunk Creek Road (Doc. 4).

On March 12, 2025, Plaintiff moved for summary judgment under Federal Rule of Civil Procedure 56, seeking declaratory relief defining the parties' respective rights under the easements. (Doc. 19.) Defendants filed a cross-motion for summary judgment on June 10, 2025, asserting that Incline Ranch's claims are barred by the QTA's twelve-year statute of limitations or, in the alternative, that the claims fail on the merits. (Doc. 43 at 6.)

Plaintiff filed its combined opposition and reply on July 31, 2025. (Doc. 56.) Defendants submitted their reply on August 19, 2025. (Doc. 58.) The cross-motions for summary judgment are fully briefed and ripe for disposition.

## LEGAL STANDARD

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Summary judgment is appropriate where the documentary evidence permits only one conclusion. *Id.* at 251. "The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citations omitted).

The party seeking summary judgment bears the initial burden of identifying the "portions of the pleadings, depositions, answers to interrogatories," admissions, and affidavits that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

When parties file cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court must nevertheless determine whether any genuine issues of material fact remain and may not grant summary judgment where such disputes exist. *Id.* at 1136.

### DISCUSSION

As a preliminary matter, Plaintiff objects to the Defendants' reliance on several maps and the declaration of Forest Engineer Jefferson Frady in their cross motion for summary judgment (Doc. 43), asserting that Defendants failed to identify or produce this evidence during discovery and therefore it should be excluded from consideration pursuant to Fed. R. Civ. P. 37(c)(1) (Doc. 56 at 6–7). The record does not support Plaintiff's position. Defendants represent that the Historic Forest Service Maps (Doc. 44-1) were produced with a supplemental

disclosure more than a year before summary judgment briefing (Doc. 58 at 3).

Plaintiff's own notice concedes receipt of those maps during discovery. (Doc. 57 at

2.) Plaintiff maintains only that Defendants failed to "identify" the maps in

response to Request for Production No. 36, which sought prior versions of the

Motor Vehicle Use Map ("MVUM") (*Id.*), whereas the maps in Doc. 44-1 are

Historic National Forest Maps, not Motor Vehicle Use Maps (Doc. 58 at 3 n.1).

The MVUM (Doc. 44-4) itself was produced in response to Plaintiff's Request for

Production No. 36, and the exhibits filed with the Court bear the government's

bates numbering, confirming production during discovery (Doc. 58 at 3–4).

Further, while Defendants did not identify Jefferson Frady in its July 19,

2024, response to Plaintiff's First Discovery Requests (Doc. 55-4), they later

supplemented their disclosures on March 31, 2025, identifying Frady in response

to Plaintiff's Fifth Discovery Request, which sought the names and positions of all

Forest Service personnel present on the Incline Property on or about August 28,

2023 (Doc. 55-1 at 6–7). This supplementation occurred more than two months

before Defendants filed their cross-motion for summary judgment on June 10,

2025. (Doc. 43.) Under these circumstances, the Court finds that Defendants'

disclosures were timely and substantially justified. *See* Fed. R. Civ. P. 26(e),

37(c)(1). Accordingly, exclusion is not warranted, and the Court will consider the

maps and Frady declaration as part of the summary judgment record.

Having resolved these preliminary evidentiary issues, the Court turns to the threshold question of whether Plaintiff's claims are timely under the QTA.

## I.      Quiet Title Act Statute of Limitations

The QTA, 28 U.S.C. ¶ 2409a, provides "the exclusive means by which adverse claimants can challenge the United States' title to real property." *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999). The QTA contains a statute of limitations under which "[a]ny civil action . . . shall be barred unless it is commenced within twelve years of the date upon which it accrued." 28 U.S.C. § 2409a(g). A claim is considered "to have accrued on the date the plaintiff or his predecessor-in-interest knew or should have known of the claim of the United States." *Id.* The phrase "should have known" establishes a test of reasonableness: accrual occurs when the "United States' actions would have alerted a reasonable landowner" of the United States' adverse interest. *Shultz v. Dep't of the Army*, 886 F.2d 1157, 1160 (9th Cir. 1989).

The accrual analysis differs where the property interest at issue is an easement rather than fee title. *Wilkins v. United States*, 2020 WL 2732251, at *7 (D. Mont. May 26, 2020). In easement cases, a claim accrues only when the government, "adversely to the interests of plaintiffs, denie[s] or limit[s] the use of the roadway for access to plaintiffs' property." *Michel v. United States*, 65 F.3d 130, 132 (9th Cir. 1995) (per curiam) (quoting *Werner v. United States*, 9 F.3d

1514, 1516 (11th Cir. 1993)). By contrast, government actions that merely reflect regulatory or supervisory authority over the servient estate do not, by themselves, place an easement holder on notice of an adverse claim. *McFarland v. Norton*, 425 F.3d 724, 727 (9th Cir. 2005).

Although *Michel* and *McFarland* involved landowners asserting easements across federal property, *Wilkins* clarifies that the same principles apply regardless of whether the government holds the easement or the servient estate. 2020 WL 2732251, at *8. The governing question remains when a reasonable landowner would have known that the government was asserting rights inconsistent with the scope of the easement as the landowner understands it.

Here, Plaintiff alleges that the Forest Service exceeded the Johnson Easement by asserting rights that were not conveyed in the 1967 Conveyance, including: (1) the authority to allow and manage public use and parking along the Incline Road Section within the Incline Property; (2) the authority to install and maintain a gate across the roadway within the Incline Property; and (3) the authority to regulate snowplowing or impose permit and maintenance requirements on Plaintiff beyond its obligation not to "unduly interfere" with the Forest Service's use. (Doc. 19 at 2–3.) The statute of limitations therefore begins to run when a reasonable landowner would have known that the Forest Service claimed

one or more of these rights in a manner inconsistent with Plaintiff's asserted interpretation of the easement.

### A. Public Use and Parking within the Incline Property

Plaintiff contends that the Johnson Easement granted only a right-of-way for Forest Service ingress and egress and did not authorize the Forest Service to allow or facilitate third-party public access or parking along the Incline Road Section without monitoring or controlling such use. (Doc. 20 at 5, 16.) Plaintiff seeks a declaration limiting Defendants' rights to their own use and that of their contractors and permittees, arguing that Defendants have overburdened the easement by permitting recreational users to access and park along Skunk Creek Road within the Incline Property. (*Id.* at 16, 23.) Plaintiff further argues that public parking in particular constitutes an impermissible "evolving use" under Montana law because it is revolutionary in scale, type, and intensity compared to the original grant of ingress and egress, and because it imposes substantial burdens on the servient estate, including blocked access to Plaintiff's residence and creating safety hazards. (*Id.* at 17–20.)

Defendants argue that Plaintiff's quiet title claims concerning both public use and public parking are barred by the QTA's twelve-year statute of limitations. (Doc. 43 at 11–13.) Under the QTA, a claim accrues when the government's conduct "would have alerted a reasonable landowner" that the United States

9

claimed an adverse interest. *Shultz*, 886 F.2d at 1160. The government need not show explicit notice of its claim, nor must the government's claim be "clear and unambiguous." *State of N.D. ex rel. Bd. of Univ. & Sch. Lands v. Block*, 789 F.2d 1308, 1313 (8th Cir. 1986). "Knowledge of the claim's full contours is not required. All that is necessary is a reasonable awareness that the government claims some interest adverse to the plaintiff's." *Id.* (quoting *Knapp v. United States*, 636 F.2d 279, 283 (10th Cir. 1980)).

Here, the undisputed record demonstrates that Forest Service maps have depicted Skunk Creek Road as open to public use for decades. As early as 1970, Forest Service maps have consistently shown Skunk Creek Road as a public route, with year-round access up to the Forest Service gate and a seasonal closure beyond. (Doc. 43 at 12.)[1] The map accompanying the Forest Service's 2006 Travel Management Plan identifies Skunk Creek Road as an "Access to Forest Road" and "Managed for Passenger Car Use." (*Id.*; Doc. 55-1 at 11–12.) The 2007 Gallatin National Forest MVUM designates the road "Open to Highway Legal Vehicles Only" and states that "[m]otor vehicle designations include parking along

---

[1] Although Plaintiff contends that the maps and Frady declaration were not properly disclosed during discovery (Doc. 56 at 6), the Court previously found that the record establishes otherwise and deemed Defendants' disclosures timely and substantially justified, as set forth in the Discussion section above.

designated routes and at facilities associated with designated routes when it is safe to do so." (*Id.* at 12–13; Doc. 44-4.)

In addition to these published designations, Defendants offer witness testimony establishing that members of the public have openly used and parked along Skunk Creek Road—including within what is now the Incline Property—for decades. (Docs. 44-5 (Declaration of Richard Dowdell, who purchased property along the road in 2000, visited regularly before becoming a full-time resident in 2011, recreated along Skunk Creek Road, parked "at various spots" to do so, and observed others, including members of the public, doing the same; he specifically recalls parking at the hairpin turn near the gatehouse, and states that the prior owners "plowed a wide spot for the public to park in winter); 44-6 (Declaration of Richard Blum, who has owned property along Skunk Creek Road since 1985, frequently recreated and parked along the road, including within the present-day Incline Property, with the knowledge of previous owners; he similarly recalls consistent public use and winter parking at the hairpin turn prior to the Forest Service gate's installation); 44-2 (Declaration of Wendi Urie, Forest Service Employee, who has personally parked and recreated along the road, states that the public has historically used the hairpin turn "Parking Area" for roadside parking year-round, particularly during winter closure); 44-7 (Declaration of Forest Engineer Jefferson Frady, who confirms the "long history of public use" of Skunk

11

Creek Road and that "members of the public commonly park along NFS roads" throughout the Custer Gallatin National Forest, including Skunk Creek).)

Defendants analogize this combination of historic mapping and open public use to the record in *Wilkins*, where this Court concluded that Forest Service maps "t[old] a clear story" about the public nature of the road, and that witness testimony showed "the public heard this message and has been using the road as a public access route" for decades. *Wilkins*, 2020 WL 2732251, at *9.

The Court finds the Defendant's argument persuasive. By no later than 2007, when the Forest Service published the MVUM designating Skunk Creek Road for public motor vehicle access and permitting roadside parking "when it is safe to do so," and when long-standing public recreational use was evident to and accepted by Plaintiff's predecessors, the Forest Service's asserted authority was on clear display.

Plaintiff argues that the 2007 MVUM did not provide constructive notice that the Forest Service claimed authority to permit roadside parking within the Incline Property, asserting that the map's reference to parking "when it is safe to do so" was insufficient to place a reasonable landowner on notice of an adverse claim. (Doc. 56 at 10–14.) Plaintiff further maintains that, because Montana traffic and fire-safety regulations allegedly prohibit parking along this narrow segment of Skunk Creek Road, a reasonable landowner would have understood the MVUM as

12

affirmatively signaling that parking was not allowed. (*Id.*) These arguments, however, are unavailing. The QTA's statute of limitations does not hinge on whether a landowner believes the government's interpretation is ultimately correct under state law, but on when the government's conduct would have put a reasonable landowner on notice of its adverse claim. *See Sawtooth Mountain Ranch LLC v. United States*, 2022 WL 558354, at *7 (D. Idaho Feb. 24, 2022) ("The limitations period is not tolled when government action simply compounds a pre-existing cloud on title."). Even invalid or disputed claims trigger the limitations period once they are sufficiently asserted. *Id.* (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 769 (4th Cir. 1991)). Once the Forest Service openly claimed, and the public openly exercised, a right to use and park along the Incline Road Section, the QTA's limitations period began to run.

This combination of public designations and long-standing, routine public use, including regular roadside parking, would have alerted a reasonable landowner well before November 17, 2011, that the United States claimed authority to allow both public access and roadside parking along the Incline Road Section.

Accordingly, the Court concludes that a reasonable landowner knew or should have known, prior to November 17, 2011, that the Forest Service asserted a right to authorize public use and parking along Skunk Creek Road, including

within the Incline Property. Plaintiff's quiet title claim challenging that authority is therefore barred by 28 U.S.C. § 2409a(g).

### B. Gate Placement Within the Incline Property

Plaintiff next challenges the Forest Service's installation of a gate across Skunk Creek Road within the Incline Property. Plaintiff contends that the Johnson Easement granted Northern Pacific only a right-of-way for ingress and egress and did not authorize the installation of a gate on the servient estate. (Docs. 20 at 30; 56 at 25–27.) Plaintiff relies on Forest Service "Road Maintenance Accomplishments" reports showing that a gate on Skunk Creek Road was "relocated" in 2002 and again in 2012. (Doc. 56 at 8.) Plaintiff argues these reports show that the Forest Service first moved the gate to just inside the Forest Service boundary in 2002 and then relocated it to its current position within the Incline Property in 2012. (Doc. 56 at 8–10.) Plaintiff asserts that the Road Maintenance Accomplishments Reports are reliable contemporaneous evidence of when the gate was moved and that the declarations relied upon by Defendants—particularly those of Jefferson Frady and Jonathan Kempff—are inadmissible or unreliable. (*Id.*) Plaintiff therefore maintains that the contemporaneous maintenance records establish the gate was relocated to its current location in 2012, less than twelve years before this suit was filed, rendering its QTA claim timely. (*Id.* at 10.)

14

Defendants argue that the gate-related claim is untimely under the QTA's twelve-year limitations period because the Forest Service installed the gate in its current location no later than 2002–2003, when Plaintiff's predecessor in interest constructed the adjacent gatehouse. (Doc. 43 at 15–16.) In support, Defendants cite declarations from Richard Dowdell (Doc. 44-5 ¶ 12), Richard Blum (Doc. 44-6 ¶ 10), and Forest Service employees Jefferson Frady (Doc. 44-7 ¶ 12) and Jonathan Kempff (Doc. 58-1 ¶¶ 6–10), each stating that the Forest Service gate located near the gatehouse on Skunk Creek Road within the Incline Property has existed in substantially the same location since the early 2000s (Doc. 43 at 18). Kempff explains that Skunk Creek Road contains two Forest Service gates—one located approximately three miles from Brackett Creek Road near the Incline gatehouse, and another about eight miles farther north where the road meets Olson Creek Road. (Doc. 58-1 ¶¶ 5–6, 11.) He states that the first gate, near the Incline gatehouse, was installed under his direction in the late 1990s or early 2000s, no later than 2003, at the time Plaintiff's predecessor constructed the gatehouse. (*Id.* ¶¶ 8–10.) Kempff further states that the second gate was installed in 2012 when the Forest Service constructed the Bangtail Divide Trailhead near the Olson Creek intersection. (*Id.* ¶ 12.) Based on his review and approval of the 2012 Road Maintenance Accomplishments Report, Kempff clarifies that the report's reference

to a "relocated gate" pertains to the second gate on Skunk Creek Road—not to the gate located on what is now the Incline Property. (*Id.* ¶ 15.)

Although Plaintiff disputes Defendants' interpretation of the 2012 Road Maintenance Accomplishments Report, Plaintiff offers no declaration or firsthand evidence supporting the assertion that the gate within the Incline Property was relocated in 2012. Plaintiff relies solely on the 2012 Road Maintenance Accomplishments Report reference to a "relocated gate," and broadly asserts that this must refer to the gate at issue. (Doc. 56 at 8–10.) However, the 2012 Road Maintenance Accomplishments Report does not identify the gate's location, and Kempff's sworn explanation that it references the second gate on Skunk Creek Road, not the gate located on the Incline Property, is unrebutted. Even accepting that the 2012 Road Maintenance Accomplishments Report expressly references a "relocated gate," that reference does not establish that the Forest Service newly asserted an adverse claim within the twelve-year limitations period. Rather, it confirms ongoing management of a structure whose presence and function had been manifest for more than a decade. The QTA's limitations period is triggered by notice of the government's adverse claim, not by subsequent maintenance or incremental changes in the position of existing improvements. *See Sawtooth*, 2022 WL 558354, at *7–8 (explaining that accrual under the QTA is not delayed by later government action or inaction and that the limitations period begins when a

16

landowner knew or should have known of the government's recorded or asserted claim).

In any event, the Court finds that Defendants' affidavits and related exhibits demonstrate that the Forest Service gate within the Incline Property has been in substantially the same location since at least 2002–2003. That conclusion is not materially contradicted by the documentary evidence submitted by Plaintiff. Accordingly, the Court finds no genuine dispute of material fact as to when the Forest Service gate was installed within the Incline Property.

Under the QTA, the relevant question is when a reasonable landowner would have known that the Forest Service claimed the right to install and maintain a gate across Skunk Creek Road within the Incline Property, rather than the precise timing of any subsequent relocation or maintenance activity. *See Shultz*, 886 F.2d at 1160. The record shows that by 2002–2003, the Forest Service had installed and was operating a gate on Skunk Creek Road within the Incline Property. (Docs 43 at 16–18; 58 at 4–5; 58-1 ¶¶ 6–15.) Testimony and exhibits submitted by Defendants establish that by 2002–2003, a gate near the gatehouse on Skunk Creek Road within the Incline Property was plainly visible and continuously in use. (*Id.*) Witnesses, including long-time residents along the road, describe the gate and gatehouse as having existed in the same location for decades, with members of the public routinely parking nearby to access National Forest lands. (*Id.*) This

consistent and visible use supports the conclusion that the Forest Service's
assertion of authority under its easement was open and apparent well before
November 2011.

Accordingly, the Court concludes that Plaintiff's predecessors-in-interest
knew or should have known, well before November 2011, that the Forest Service
claimed authority under its easement to place and maintain a gate across Skunk
Creek Road at or near its current location within the Incline Property. Because the
QTA's twelve-year limitations period began to run at that time, Plaintiff's claim
challenging the Forest Service's gate placement and authority is barred by 28
U.S.C. § 2409a(g).

### C. Winter Snowplowing and Maintenance Obligations

Defendants argue that Plaintiff's claim challenging the Forest Service's
snowplowing permit requirements is barred by the QTA's twelve-year statute of
limitations. (Doc. 43 at 33–36.) They contend that, well before 2011, the Forest
Service consistently managed Skunk Creek Road as part of the National Forest
road system, authorizing private landowners to perform snow removal at their own
expense, as reflected in public records and long-standing practice. (*Id.*) Defendants
point to the 2007 Gallatin National Forest MVUM, which states that
"[m]aintenance of designated roads and trails will depend on available resources,
and many may receive little maintenance." (*Id.* at 12–13.) They argue that this

language, together with the Forest Service's long-standing practice, demonstrates that the agency has never been obligated to perform winter plowing on Skunk Creek Road and has historically exercised its discretion to provide only limited maintenance. (*Id.* at 12–14, 35–36.) Defendants further rely on declarations showing that, for decades, private landowners performed winter plowing at their own expense and did so with Forest Service authorization. (Docs. 44-2 ¶¶ 19–21; 44-5 ¶ 9; 44-6 ¶ 8.)

Plaintiff disputes that its claim is time-barred, arguing that the Forest Service's demand that Incline Ranch sign a snowplowing permit exceeds the scope of the Johnson Easement and represents an unauthorized assertion of control. (Docs. 20 at 24–29; 56 at 28–32.) Plaintiff maintains that the easement grants only a limited right of ingress and egress, does not authorize the Forest Service to require permits or impose cost-sharing obligations, and allows the servient owner to perform routine maintenance such as snowplowing so long as it does not interfere with the easement's use. (*Id.*) Plaintiff also argues that Defendants' reliance on the 2007 MVUM to establish accrual is misplaced because the map's statement that maintenance "will depend on available resources" would not have alerted a reasonable landowner that the Forest Service claimed an adverse interest or disclaimed its duty to maintain the road. (*Id.* at 30–32.)

19

Under the QTA, the relevant question is when a reasonable landowner would have known that the United States claimed the right to regulate snowplowing on Skunk Creek Road within the Incline Property. *See* 28 U.S.C. § 2409a(g); *Shultz*, 886 F.2d at 1160.

Plaintiff's thinly veiled attempt to couch its claims in terms of the Forest Service "exceeding the scope" of the Johnson Easement—rather than what it is in substance, a challenge to the agency's long-standing permitting and maintenance practices on Skunk Creek Road—is contradicted by the record. The evidence shows that, for decades, the Forest Service has administered snowplowing permits, declined to perform winter plowing itself, and publicly stated in the 2007 MVUM that road maintenance "will depend on available resources" and that "many [roads] may receive little maintenance." (Docs. 43 at 12–14, 35–36; 44-2 ¶¶ 19–21; 44-5 ¶ 9; 44-6 ¶ 8.) These long-established practices and the Forest Service's public representation in the 2007 MVUM made its interpretation of its authority over winter maintenance apparent well before November 2011.

Plaintiff challenges the reliability and relevance of Defendants' declarants but offers no competing testimony regarding the Forest Service's historical maintenance practices. (Doc. 56 at 16–21.) Even so, the record as a whole would have alerted a reasonable landowner that the Forest Service claimed authority to control and condition winter plowing on Skunk Creek Road.

Plaintiff further argues that the Forest Service's requirement that Incline Ranch obtain a snowplowing permit imposes obligations not found in the Johnson Easement or the 1967 Conveyance. (Doc. 20 at 25–28.) Whether those obligations were proper under the easement goes to the merits of the parties' dispute, not to the statute of limitations. The relevant question under the QTA is when a reasonable landowner would have known that the Forest Service claimed authority to regulate winter snowplowing on Skunk Creek Road. Once the Forest Service made clear through its conduct and public disclosures that it regarded winter plowing as a regulated activity subject to its approval, the statute of limitations began to run and was not restarted by subsequent administrative actions. Plaintiff's remaining arguments concerning the scope of the Johnson Easement and the Forest Service's maintenance duties go to the merits rather than to when the government's claimed authority became apparent, and therefore will not be addressed by the Court.

Accordingly, the Court concludes that Plaintiff or its predecessors-in-interest knew or should have known, well before November 17, 2011, that the Forest Service claimed authority to regulate winter snowplowing and related maintenance on Skunk Creek Road and to condition such activity on compliance with agency permit requirements. Any challenge to that asserted authority is therefore barred by 28 U.S.C. § 2409a(g).

21

## CONCLUSION

Because each of Plaintiff's claims is barred by the twelve-year statute of limitations in 28 U.S.C. § 2409a(g), the Court will dismiss this action with prejudice for lack of jurisdiction, and all other pending motions will be denied as moot. Accordingly,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 19) is DENIED.

IT IS FURTHER ORDERED that Defendants' Cross Motion for Summary Judgment (Doc. 42) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion in Limine (Doc. 34) is DENIED AS MOOT.

The Clerk shall enter judgment in favor of Defendants and close this case.

DATED this 24th day of November, 2025.

Dana L. Christensen, District Judge
United States District Court

22